

# In the
# Missouri Court of Appeals
## Western District

FLORENCE RAINEY-HICKS, )
)
         **Appellant,** ) **WD77960**
)
v. ) **OPINION FILED: May 26, 2015**
)
MISSOURI ACCREDITATION OF )
PROGRAMS FOR CHILDREN AND )
YOUTH, ET AL., )
)
         **Respondents.** )

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Kevin M.J. Crane, Judge

Before Division Two: Lisa White Hardwick, Presiding Judge, Victor C. Howard, Judge
and Cynthia L. Martin, Judge

Florence Rainey-Hicks ("Rainey-Hicks") appeals from the trial court's entry of

summary judgment in favor of the Missouri Accreditation of Programs for Children and

Youth ("Missouri Accreditation") and Pamela Speer ("Speer") in a lawsuit filed following

revocation of accreditation of a daycare facility owned by Rainey-Hicks. Rainey-Hicks

asserts that the trial court erred in granting summary judgment because: (1) a genuine

issue of material fact exists regarding the existence of a contract and a fiduciary

relationship between Rainey-Hicks and Missouri Accreditation; (2) a genuine issue of material fact exists regarding Rainey-Hicks's business expectancy in receiving accreditation from Missouri Accreditation and regarding an intentional interference with that expectancy; (3) a genuine issue of material fact exists regarding Missouri Accreditation's false representation regarding its fees; and (4) as a matter of law, Missouri Accreditation's status as a state actor is not a necessary element to a common law due process violation claim. We affirm.

## Factual and Procedural Background[1]

Missouri Accreditation is a non-profit organization recognized by the Missouri Department of Social Services as an accrediting authority for child care providers in the state.[2] To receive accreditation, a child care provider must complete a seven-step process that includes both the review of an application and an inspection of the child care facility by a Missouri Accreditation review team. If the child care facility receives a satisfactory report from the review team, the child care program is eligible for three years of accreditation by Missouri Accreditation subject to the payment of prescribed fees. The prescribed fees for a child care program with a licensed capacity of 1-60 children are $1,075. These fees include: a $325 fee to set up an online account; a $150 application fee; a $300 annual accreditation fee; and a $300 review team fee. The annual accreditation fee is due yearly on the anniversary of accreditation.

---

[1]In reviewing the grant of summary judgment, we view the record in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences. *Patrick v. Monte Owens Agency, Inc.*, 332 S.W.3d 917, 919 (Mo. App. W.D. 2011).

[2]According to the record, child care programs that receive accreditation from Missouri Accreditation are eligible for a 20 percent increase in child care subsidy rates from the Missouri Department of Social Services.

Rainey-Hicks is the sole proprietor and owner of A World of Discoveries Daycare, a child care facility in Columbia, Missouri. The facility was accredited by Missouri Accreditation for a three-year term from March 28, 2008, to March 28, 2011. Prior to expiration of this term, Rainey-Hicks applied for renewal of the facility's accreditation. A Missouri Accreditation review team visited Rainey-Hicks's facilities on February 22, 2011. The review revealed several deficiencies. Though the deficiencies were not resolved by March 17, 2011, Missouri Accreditation elected not to deny the renewal request but to instead afford Rainey-Hicks a twelve-month conditional extension of her accreditation as she worked to achieve the standards required to secure a full three-year renewal accreditation. The conditional extension was subject to several written requirements: (1) submission to unannounced visits by the Missouri Accreditation staff during that twelve-month period; (2) completion of professional development training in the areas of early childhood free play and free choice; (3) hand washing upon a child's arrival; and (4) improvements with no serious incidents that pose harm to children in the twelve-month period. The conditional extension was also subject to Rainey-Hicks payment of an extension fee of $300 and "all travel expenses" for the Missouri Accreditation review team. A report prepared by Missouri Accreditation and provided to Rainey-Hicks specifically stated that "Missouri Accreditation reserves the right to hold accreditation certificates until all fees are paid in full."

On January 26, 2012, Missouri Accreditation determined that Rainey-Hicks was eligible for accreditation for the two-year balance of the renewal term she had applied for, subject to Rainey-Hicks's payment of $200 to reimburse Missouri Accreditation for

3

travel costs incurred in connection with unannounced visits by the review team during the conditional extension term and of $300 for the annual accreditation fee. Missouri Accreditation's decision was explained to Rainey-Hicks in a face-to-face meeting with Speer on February 2, 2012. During that meeting, Speer gave Rainey-Hicks an invoice for the required fees. Rainey-Hicks did not pay the fees by the expiration date of her conditional extension, March 28, 2012.

On March 7, 2012, and on April 6, 2012, Missouri Accreditation sent Rainey-Hicks second and third notices of the amounts due via e-mail. The fourth and final notice was e-mailed by Speers to Rainey-Hicks on April 24, 2012. That notice stated that the invoice "MUST BE PAID IN FULL BY April 26, 2012," and advised Rainey-Hicks that the Missouri Accreditation Board would be meeting on that date where action would likely be taken if fees were not paid. Rainey-Hicks paid no portion of the outstanding invoice by April 26, 2012. Thus, Missouri Accreditation decided on that date that it would not extend accreditation for A World of Discoveries Daycare for the remaining two years of the renewal term. Missouri Accreditation informed Rainey-Hicks of its decision by certified mail.

Rainey-Hicks wrote a $500 check to Missouri Accreditation on May 3, 2012. Missouri Accreditation cashed the check and retained the $200 for reimbursement of travel expenses but remitted a $300 check back to Rainey-Hicks with the notation "Refund for 2012-13 Annual Fee."

4

Rainey-Hicks appealed Missouri Accreditation's decision not to renew her facility's accreditation on May 23, 2012. On July 12, 2012, Missouri Accreditation affirmed its decision not to renew accreditation.

In November 2012, Rainey-Hicks filed suit against Missouri Accreditation and Speer in state court ("Initial Lawsuit"). The Initial Lawsuit alleged three claims, including a civil rights claim under 42 U.S.C. section 1983. The Initial Lawsuit was removed to federal court. Missouri Accreditation and Speer moved for partial summary judgment on the civil rights claim. The federal court granted the motion for partial summary judgment, concluding that the civil rights claim lacked merit as a matter of law because Missouri Accreditation's "accreditation decision does not constitute state action." Without the civil rights claim, the Initial Lawsuit lacked a federal question, requiring remand of the case to state court. Rainey-Hicks dismissed the Initial Lawsuit without prejudice on June 18, 2013.

Rainey-Hicks filed the instant action against Missouri Accreditation and Speer on November 4, 2013. Rainey-Hicks filed an Amended Petition on February 7, 2014. The Amended Petition asserted three claims against Missouri Accreditation for breach of accreditation contract and breach of duty of good faith; negligent misrepresentation; and violation of common law due process rights. The Amended Petition asserted a fourth claim against both Missouri Accreditation and Speer for intentional interference with Rainey-Hicks's business expectations.

Missouri Accreditation and Speer filed a motion for summary judgment with respect to all four claims. Woven throughout the motion was the argument that that

5

Rainey-Hicks failed to pay fees owed to Missouri Accreditation as a condition of accreditation. Rainey-Hicks argued in response that she never promised or agreed to pay fees incurred in connection with unannounced visits by the review team during the conditional accreditation extension term. However, Rainey-Hicks admitted during the hearing on Missouri Accreditation's motion that the $300 annual accreditation fee she had been billed was "clearly due" and that non-payment of that fee would support good cause not to renew accreditation. The trial court granted Missouri Accreditation's motion for summary judgment in a judgment that does not explain its reasoning.

Rainey-Hicks appeals. Additional facts are discussed in the analysis portion of this opinion as necessary.

**Standard of Review**

The standard of review when considering an appeal from an entry of summary judgment is essentially *de novo*. *Benson v. Kansas City Bd. of Police Comm'rs*, 366 S.W.3d 120, 123 (Mo. App. W.D. 2012). As such, we apply the same criteria as the trial court to determine whether summary judgment was appropriate. *Patrick v. Monte Owens Agency, Inc.*, 332 S.W.3d 917, 919 (Mo. App. W.D. 2011). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Rule 74.04(c)(6). When considering whether a genuine issue of material fact exists, we view the record in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences. *Patrick*, 332 S.W.3d at 919. We will affirm the grant of summary judgment under any theory that is supported by the record. *Benson*, 366 S.W.3d at 123.

6

A defending party may establish the right to summary judgment by demonstrating: "'(1) facts negating any one of the elements of the non-movant's claim; (2) that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one of the elements of the non-movant's claim; or (3) that there is no genuine dispute as to the existence of facts necessary to support movant's properly pleaded affirmative defense.'" *Ditto, Inc. v. Davids*, WD77297, 2014 WL 5840728, at *4 (Mo. App. W.D. Nov. 12, 2014) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011)).

## Analysis

Rainey-Hicks presents four points on appeal, one for each count set forth in her Amended Petition.

Rainey-Hicks's first point on appeal claims error in granting summary judgment on the first count in her Amended Petition which alleged breach of contract, breach of the duty of good faith, and breach of fiduciary duty based on a special relationship with Missouri Accreditation. The claim of error related to the theory of breach of the duty of good faith is not further developed in the argument portion of Rainey-Hicks's Brief, and is abandoned. *Vigil-Keyes v. Vanderwal*, 203 S.W.3d 749, 751 n.2 (Mo. App. W.D. 2006).

A breach of contract claim requires proof of four elements: "'(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" *Rental Co. v. Carter Grp., Inc.*, 399 S.W.3d 63, 67 (Mo. App. W.D. 2013)

7

(quoting *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 531 (Mo. App. E.D. 2011)). Rainey-Hicks claims that Missouri Accreditation's Policies and Procedures Manual ("Policies and Procedures Manual") is a "contract." Missouri Accreditation disputes that position and argues that the Policies and Procedures Manual is simply a unilateral informational publication.

We need not resolve whether the Policies and Procedures Manual constituted a contract between Rainey-Hicks and Missouri Accreditation. Even if we assume that it did, the uncontested facts establish that Rainey-Hicks cannot prove that she performed or tendered performance as required by the alleged contract, an essential element of her breach of contract claim. The Policies and Procedures Manual specifies that the annual accreditation fee for facilities with a licensed capacity of 1-60 children is $300. The Policies and Procedures Manual also states: "Programs must pay their annual accreditation fee . . . **prior to the accreditation date**." Finally, the report outlining Missouri Accreditation's willingness to provide Rainey-Hicks with a provisional extension of the facility's accreditation, notwithstanding serious deficiencies found during a site inspection, plainly expressed the condition that "Missouri Accreditation reserves the right to hold accreditation certificates until all fees are paid in full." Rainey-Hicks failed to timely pay the $300 annual accreditation fee required by Missouri Accreditation to maintain A World of Discoveries Daycare's accreditation. Rainey-Hicks admits this annual fee was "clearly due." Regardless her dispute with assessment of the $200 fee for

8

travel expenses incurred by Missouri Accreditation,[3] Rainey-Hicks's undisputed failure to timely pay the $300 annual accreditation fee required by the Policies and Procedures Manual renders her unable as a matter of law to prove all of the essential elements of a claim for breach of contract.

To prevail on a claim for breach of fiduciary duty, a plaintiff must prove: "(1) the existence of a fiduciary duty between the plaintiff and the defending party; (2) that the defending party breached the duty; and (3) that the breach caused the plaintiff to suffer harm." *Henry v. Farmers Ins. Co.*, 444 S.W.3d 471, 480 (Mo. App. W.D. 2014) (internal quotation marks omitted). Missouri Accreditation's motion for summary judgment argued that there is no fiduciary duty between it and the entities it accredits. Rainey-Hicks argued to the contrary, but cited no authority for her contention in the trial court. We are aware of no Missouri authority recognizing a fiduciary duty between an accreditation authority and an entity or facility it accredits. More to the point, even assuming the existence of a fiduciary duty, the uncontested cause of Rainey-Hicks's alleged harm -- a reduced subsidy rate from the Missouri Department of Social Services -- was Rainey-Hicks's admitted failure to timely pay a required annual accreditation fee. The uncontroverted facts establish that Rainey-Hicks cannot prove one or more of the essential elements of a claim of breach of fiduciary duty.

---

[3]We discuss, *infra*, in connection with Rainey-Hicks's third point on appeal that the Policies and Procedures Manual also includes language which affords Missouri Accreditation the right to seek reimbursement for costs incurred in connection with site visits.

The trial court did not err in granting summary judgment in favor of Missouri Accreditation on the first count of Rainey-Hicks's Amended Petition. Rainey-Hicks's first point on appeal is denied.

Rainey-Hicks's second point relied on concerns the second count in her petition, her claim for intentional interference with a business expectancy[4] against both Missouri Accreditation and Speer. Rainey-Hicks asserts that the trial court erred in its entry of summary judgment on this claim because she can present evidence that A World of Discoveries Daycare met the standards for accreditation and that the refusal to renew her accreditation caused her to lose a differential payment for state-paid childcare at the accreditation rate.

The claim of intentional interference with a business expectancy requires proof of: "(1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006). Missouri Accreditation and Speer assert that Rainey-Hicks's admitted failure to pay the $300 annual accreditation fee precludes Rainey-Hicks from establishing the first, third, and fourth elements of her claim as a matter of law. Rainey-Hicks argues that there are genuine issues of material fact in dispute regarding her ability to establish the first, third, and fourth elements of her claim.

---

[4]This cause of action is also called tortious interference. *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006).

"'In order to have a claim for interference with a valid business expectancy, it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged. If it is not, there was nothing for defendants to have interfered with.'" *Londoff v. Walnut St. Sec., Inc.*, 209 S.W.3d 3, 9 (Mo. App. E.D. 2006) (quoting *Service Vending Co. v. Wal–Mart Stores, Inc.,* 93 S.W.3d 764, 769 (Mo. App. S.D. 2002)). Rainey-Hicks alleges that Missouri Accreditation revoked A World of Discoveries Daycare's accreditation when she did not remit $500 to Missouri Accreditation by April 26, 2012, to pay for the annual accreditation fee and the expenses for unannounced visits of the facility by the review team. While Rainey-Hicks disputes the propriety of the $200 reimbursement fee, her attorney admitted that the $300 annual fee was "clearly due." Both the Policies and Procedures Manual and the report outlining the February 22, 2011 visit of A World of Discoveries Daycare state that all fees must be paid for an entity to receive accreditation. Because Rainey-Hicks did not remit an annual accreditation fee to Missouri Accreditation that was admittedly due, Rainey-Hicks had no *reasonable* expectation in her accreditation as a matter of law.

Moreover, during the hearing on Missouri Accreditation's motion for summary judgment, Rainey-Hicks admitted that the failure to pay the annual accreditation fee would support "good cause" to revoke accreditation. Rainey-Hicks thus admitted that she could not establish the absence of justification for Missouri Accreditation's decision not to renew her accreditation for an additional two years, an essential element of her claim. The uncontroverted facts establish that Rainey-Hicks cannot prove one or more of the essential elements of a claim of intentional interference with a valid business expectancy.

11

The trial court did not err in granting summary judgment in favor of Missouri Accreditation on the second count of Rainey-Hicks's Amended Petition. Rainey-Hicks's second point on appeal is denied.

Rainey-Hicks's third point on appeal claims error in the grant of summary judgment on the third count of her Amended Petition alleging a claim for negligent misrepresentation against Missouri Accreditation. Rainey-Hicks contends that genuine issues of material fact exist with respect to this claim because the Policies and Procedures Manual did not identify the non-payment of fees as a basis for revoking accreditation.

To recover for negligent misrepresentation, a plaintiff must establish: "'(1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.'" *Bailey v. Hawthorn Bank*, 382 S.W.3d 84, 100 (Mo. App. W.D. 2012) (quoting *Midwest Bankcentre v. Old Republic Title Co.*, 247 S.W.3d 116, 129-30 (Mo. App. E.D. 2008)).

Both the motion for summary judgment and the plaintiff's affidavit attached copies of the fee structure found in the Policies and Procedures Manual. That document states that, for a child care facility with a licensed capacity of 1-60 children, the annual accreditation fee is $300. Rainey-Hicks does not dispute that the annual fee is accurately disclosed in the Policies and Procedures Manual. Rainey-Hicks asserts, however, that the $200 fee for review team extension visits in the case of conditional accreditation is not

12

listed in the fee structure found in the Policies and Procedures Manual. Rainey-Hicks thus argues that the Policies and Procedures Manual contains a false representation.

While Rainey-Hicks is technically correct that the $200 fee for the extension visits is not explicitly listed on the fee structure, she fails to account for the fact that the Policies and Procedures Manual otherwise provides:

> Missouri Accreditation reserves the right to request the Review Teams' Extension Visit travel expense[s] also be paid prior to the Extension Visit. The return travel expenses for the Extension Visit will be the same amount paid as the Review Team visit, unless Missouri Accreditation Executive Director determines that there should be [a] change in Review Team members.

The report that Rainey-Hicks was given when A World of Discoveries Daycare was afforded a conditional accreditation extension explicitly required Rainey-Hicks to submit to unannounced site visits, and provided that: "Missouri Accreditation reserves the right to hold accreditation certificates until all fees are paid in full." Rainey-Hicks cannot prove that Missouri Accreditation made a false representation, an essential element of her negligent misrepresentation claim.

The trial court did not err in granting summary judgment in favor of Missouri Accreditation on the third count of Rainey-Hicks's Amended Petition. Rainey-Hicks's third point on appeal is denied.

Rainey-Hicks's fourth point on appeal argues that the trial court erred in granting summary judgment on the fourth count in her Amended Petition which alleges a common law due process claim. Rainey-Hicks argues that a common law due process violation, unlike a constitutional due process violation, does not require the defendant to be a state

13

actor. Thus, according to Rainey-Hicks, the federal court's order granting partial summary judgment because Missouri Accreditation is not a state actor does not collaterally estop her assertion of a common law due process claim in the Amended Petition.

Rainey-Hicks acknowledges that Missouri has not recognized a cause of action for violation of common law due process rights. Rainey-Hicks asks us to do so and to adopt the reasoning announced in *McKeesport Hospital v. Accreditation Council for Graduate Medical Education*, 24 F.3d 519 (3d Cir. 1994). In *McKeesport Hospital*, the Third Circuit concluded that a private, unincorporated association that evaluates and accredits medical residency program was not a state actor for the purposes of an alleged due process violation. *Id.* at 524. A ***concurring*** opinion in the case opined that, while the plaintiff did not have a constitutional due process claim, a common law due process violation, requiring no state actor, should be recognized. *Id.* at 534-35 (Becker, J., concurring). This concurring opinion is not controlling in even the Third Circuit and is of no precedential value here. Rainey-Hicks cites no other authority supporting her request that we recognize a cause of action for a common law due process violation. We decline to do so.

The trial court did not err in granting summary judgment in favor of Missouri Accreditation on the fourth count of Rainey-Hicks's Amended Petition. Rainey-Hicks's fourth point on appeal is denied.

14

**Conclusion**

The trial court's judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

15