# Supreme Court of Louisiana

The Opinions handed down on the **8th day of May, 2019**, are as follows:

**BY CLARK, J.**:

2018-CC-0735      KERRY SIMMONS v. CORNERSTONE INVESTMENTS, LLC, ET AL. (Parish of Rapides)

In a tort case against a third party tortfeasor, the lower courts did not err in prohibiting a plaintiff from introducing the full amount of medical expenses billed and in allowing only evidence of the amount actually paid by the employer through workers' compensation. We concluded the amount of medical expenses charged above the amount actually incurred is not a collateral source and its exclusion from the purview of the jury was proper. Accordingly, we affirmed the lower courts' ruling. AFFIRMED.

HUGHES, J., concurs with reasons.

GENOVESE, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2018-CC-0735

KERRY SIMMONS

VERSUS

CORNERSTONE INVESTMENTS, LLC, ET AL.

ON SUPERVISORY WRITS TO THE NINTH JUDICIAL
DISTRICT COURT, PARISH OF RAPIDES

**CLARK, Justice**

At issue is whether, in a tort case against a third party tortfeasor, the lower courts erred in prohibiting a plaintiff from introducing the full amount of medical expenses billed and allowing only evidence of the amount actually paid by the employer through workers' compensation. We granted this writ application to determine the applicability of the collateral source rule to the instant facts. For the reasons that follow, we conclude the amount of medical expenses charged above the amount actually incurred is not a collateral source and its exclusion from the purview of the jury was proper.

**FACTS AND PROCEDURAL HISTORY**

Kerry Simmons, ("Plaintiff"), was employed by Cintas Corporation No. 2, ("Cintas"), at its warehouse in Pineville, Louisiana. Plaintiff was working in the course and scope of his employment when he was injured on October 12, 2011, while attempting to close a roll-up rear bay door that had become jammed. Plaintiff received workers' compensation benefits from Cintas, including disability and medical expenses. The medical bills charged by Plaintiff's healthcare providers totaled $24,435; this amount was reduced to $18,435 in accordance with the Louisiana Workers' Compensation Act Medical Reimbursement Schedule. Thus, there is a "written off" amount of $6,000 at issue.

Subsequently, Plaintiff filed suit against Cornerstone and its insurer ("Defendants"), as the owner of the builder. Plaintiff alleged the warehouse's rear bay door was defective, and that, but for this unreasonably dangerous defect his accident would not have occurred. Cintas and its workers' compensation carrier intervened, asserting its right to reimbursement. Plaintiff settled with Cintas, waiving his claims for additional workers' compensation benefits in consideration of Cintas waiving its intervention claim for reimbursement. Thereafter, Defendants filed a motion in limine seeking to exclude evidence of the amount of medical expenses "written off" due to workers' compensation payments and include, as evidence, only the medical expenses that were actually paid by workers' compensation. Plaintiff filed a competing motion in limine seeking to have the entire amount in medical bills admitted into evidence as a collateral source.

The trial court granted Defendants' motion. Specifically, it prohibited evidence of the amount of medical expenses "written off" due to workers' compensation payments and found that the only evidence of medical expenses to go to the jury would be the amount paid by workers' compensation. The trial court also denied Plaintiff's motion in limine. The Court of Appeal, Third Circuit, denied the writ in a 2-1 decision. The dissent found that the application of the collateral source rule furthers the policy goal of tort deterrence and the trial court abused its discretion in granting Defendants' motion in limine. Plaintiff then applied to this court. We granted the writ application to determine the applicability of the collateral source rule to medical expenses "written off" pursuant to the Workers' Compensation reduced fee schedule. *Simmons v. Cornerstone Investments, LLC*, 18-735 (La. 9/21/18), 252 So.3d 491.

## DISCUSSION

*Jurisprudential Developments:*

We begin our analysis with a review of the development of the collateral source rule. In *Louisiana Dept. of Transp. & Dev. v. Kansas City Southern Railway Co.,* 02-2349, p. 6 (La. 5/20/03), 846 So.2d 734, 739, this court held:

> Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. Under this well-established doctrine, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer.

Subsequently, in *Bozeman v. State*, 03-1016 (La. 7/2/04), 879 So.2d 692, this court considered whether the collateral source rule applied to medical expenses which were "written off" under the Medicaid program. In analyzing this issue, this court noted that the plaintiff paid no consideration for the "written off" amount. The court provided:

> [W]here the plaintiff pays no enrollment fee, has no wages deducted, and otherwise provides no consideration for the collateral source benefits he receives, we hold that the plaintiff is unable to recover the "write-off" amount. This position is consistent with the often-cited statement in *Gordon v. Forsyth County Hospital Authority, Inc.*, 409 F.Supp. 708 (M.D.N.C. 1975), *affirmed in part and vacated in part*, 544 F.2d 748 (4th Cir. 1976), that "(i)t would be unconscionable to permit the taxpayers to bear the expense of providing **free medical care** to a person and then allow that person to recover damages for medical expenses from a tortfeasor and pocket the windfall." (Emphasis by the court).
>
> After careful review, we conclude that Medicaid is a free medical service, and that no consideration is given by a patient to obtain Medicaid benefits. His patrimony is not diminished, and therefore, a plaintiff who is a Medicaid recipient is unable to recover the "write off" amounts. [Boldfacing in original].

In *Bellard v. Amer. Cent. Ins. Co.,* 07-1335, (La. 4/18/08), 980 So.2d 654, this court was tasked with deciding whether an employer's uninsured motorist carrier was entitled to a credit in the amount of workers' compensation payments paid to or on behalf of the plaintiff. In making the determination, we again focused on whether the plaintiff's patrimony was diminished, stating:

After *Bozeman*, two primary considerations guide our determination with respect to the collateral source rule. The first consideration is whether application of the rule will further the major policy goal of tort deterrence. The second consideration is whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule. An analysis of these two considerations in the instant case leads to the conclusion that the collateral source rule does not apply under the circumstances presented.

*Id.* at 669. In *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945, this court found the collateral source rule did not apply to prevent the plaintiff's uninsured motorist carrier from receiving a credit for workers' compensation benefits paid by her employer, even though the plaintiff paid for the UM coverage herself. In so ruling, this court relied on a finding of solidary liability between the UM carrier and the workers' compensation insurer and a secondary finding that the workers' compensation benefits were not paid for with consideration by the plaintiff and, thus, did not diminish her patrimony. Accordingly, it concluded the collateral source rule did not override the principles of solidarity.

Most recently, the court discussed the issue in *Hoffman v. 21st Century North American Ins. Co.*, 14-2279 (La. 10/2/15), 209 So.3d 702, in which it declined to apply the collateral source rule to an attorney-negotiated medical discount. The court cited several reasons for not applying the collateral source rule:

We decline to extend the collateral source rule to attorney-negotiated medical discounts obtained through the litigation process. We hold that such a discount is not a payment or benefit that falls within the ambit of the collateral source rule. First, allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code. The wrongdoer is responsible only for the damages he or she has caused. La. Civ.Code art. 2315. The plaintiff has suffered no diminution of his patrimony to obtain the write-off, and, therefore, the defendant in this case cannot be held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay. Because the evidence before the trial court was that Mr. Hoffman paid $950.00 for the MRIs, he is not entitled to recover any additional amount. Any recovery above $950.00 for the MRIs would

4

amount to a windfall and force the defendant to compensate the plaintiff for medical expenses the plaintiff has neither incurred nor is obligated to pay.

Second, we reject plaintiff's argument that consideration for the benefit is given for attorney-negotiated medical discounts by virtue of the contractual obligation of the plaintiff to pay attorney fees, albeit only in the event of a recovery. This argument is based on the assumption that the payment of an attorney's fee is additional damage suffered by the tort victim. However, "[i]t is . . . well recognized in the jurisprudence of this state that as a general rule attorney fees are not allowed except when authorized by statute or contract." *Killebrew v. Abbott Laboratories*, 359 So.2d 1275, 1278 (La.1978). Because the tortfeasor is not liable for, and the tort victim has no right to recover, attorney fees, the payment of an attorney fee is not additional damage to the plaintiff's patrimony so as to justify the "windfall" or "double recovery" represented by the attorney-negotiated discount.

*Arguments of the Parties:*

In arguing in support of a finding that the collateral source rule applies to allow introduction to the jury of the "written off" amounts, Plaintiff contends the medical bills were paid by a source other than Defendant, the goal of tort deterrence is furthered, and Plaintiff received workers' compensation benefits in lieu of tort recovery, thereby, acting to diminish his patrimony. With respect to the latter argument, Plaintiff argues the extent of the consideration paid depends on the severity of the employer's fault in light of the fact that the employee/plaintiff cannot sue his employer in tort.

Defendants, on the other hand, aver the originally charged amount did not diminish Plaintiff's patrimony insofar as Plaintiff is not and never will be liable for the difference between the charged amount and the amount actually paid. Further, Defendants contend tort *deterrence* is not the sole factor to consider. Tort *recovery* is a motivating factor behind the jurisprudentially created doctrine; *i.e.*, making the victim whole. Here, Defendants assert Plaintiff did not incur the cost of $6,000 and received all medical treatment necessary via payment by Cintas. Thus, evidence of the reduced amount would accurately demonstrate the cost of restoring Plaintiff to

5

the same position prior to the occurrence of the tort. Anything over and above that amount to prove medical damages is speculative and non-existent. Defendants then argue that the overall scheme of the Workers' Compensation Act is a compromise between the employee and the employer, with both parties gaining advantages. Accordingly, they make the argument that the social legislation which balances the limiting of an employer's liability against the injured employee's waiver of tort recovery is not deemed "consideration" for purposes of the collateral source rule.

*Analysis:*

The first place to begin is the collateral source rule itself. "[A] tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies *received* by the plaintiff from sources independent of the tortfeasors' procuration or contribution." *Louisiana Dept. of Transp. & Dev.* 02-2349, p. 6, 846 So.2d at 739 (emphasis added). Put another way, "[t]he collateral source rule exists to prevent the tortfeasor from benefitting from the victim's *receipt* of monies from independent sources." *Cutsinger*, 08-2607 at p. 13, 12 So.3d at 954 (emphasis added). Thus, it is clear the collateral source rule is tethered to payments actually *received* by the plaintiff. Importantly, we note Defendants are not objecting to the introduction into evidence of the underlying incurred medical expenses of $18,435, which were paid by Cintas. This discounted amount, which is not the subject of the instant motion in limine, undoubtedly qualifies for application of the collateral source rule, as it is "monies from [an] independent source" that Plaintiff actually "received."[1] Thus, the jury should hear evidence of this amount when awarding medical expenses, and no reference of its workers' compensation roots should be made in front of the jury pursuant to La. Code Evid. art. 414.[2] Stated another way,

---

[1] "Receipt" is being interpreted to include payments made on behalf of the plaintiff.

[2] Louisiana Code of Evidence art. 414 provides:

6

the **amount** of the payment is admissible, as Article 414 is written simply to prevent the jury from hearing about workers' compensation being the **source** of the payment. Such an approach, as found by the lower courts and advocated for by Defendants, perfectly preserves the collateral source rule.

The "written off" amount, however, is a phantom charge that Plaintiff has not ever paid nor one he will ever be obligated to pay. In fact, such payment by Plaintiff is expressly forbidden by law. Louisiana Revised Statute 23:1034.2(D) states: "Fees in excess of the reimbursement schedule *shall not* be recoverable against the employee, employer, or workers' compensation insurer." (emphasis added). Accordingly, the healthcare provider is statutorily prohibited from recovering from the injured employee any expenses over the reduced rate. Any charge over that amount, then, is merely speculative, not reflective of actual healthcare costs, and is often intentionally inflated for negotiating purposes. *See, e.g., Haygood v. DeEscabedo*, 356 S.W. 3d 390, 393 (Tex. 2012). Thus, it cannot be said Plaintiff's patrimony was diminished in any way when he did not actually incur these fictional expenses. In *Hoffman*, we found "a discount is not a payment or benefit that falls within the ambit of the collateral source rule." *Hoffman*, 14-2279, p. 7, 209 So.3d at 706.

As pointed out in an *Amicus Curiae* brief to this court, the U.S. Fifth Circuit reached the same result in a legally indistinguishable case. In *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 353 (5th Cir. 2016), the court was faced with the issue of whether a plaintiff can recover the inflated amount charged for medical treatment versus the statutorily reduced amount paid by the Longshore and Harbor Workers'

---

Evidence of the nature and extent of a workers' compensation claim or of payment of past or future workers' compensation benefits shall not be admissible to a jury, directly or indirectly, in any civil proceeding with respect to a claim for damages relative to the same injury for which the workers' compensation benefits are claimed or paid. Such evidence shall be admissible and presented to the judge only.

Compensation insurer.[3]  The court held that the "LHWCA medical-expense payments are collateral to a third party tortfeasor *only to the extent paid*; in other words, under those circumstances, *plaintiff may not recover for expenses billed, but not paid*." *Id.* at 361 (emphasis added).  While we acknowledge that such jurisprudence has no precedential effect, we cite with approval the federal court's approach to interpreting the collateral source rule, which has its basis in common law.

Furthermore, we reject the notion that Plaintiff "paid consideration" in the form of being subjected to the Workers' Compensation scheme in the first place. The Workers' Compensation Act, as set up by the legislature, represents a compromise between the interests of *both* the employer and the employee. Accordingly, to give any preferential weight to the fact that the employee statutorily waived tort recovery against his employer would be to ignore the benefit the employee simultaneously obtains in receiving medical care free from consideration of his own contributory fault and free from the burden of undergoing litigation. *Deshotels v. Guichard Operating Co., Inc.*, 03-3511 (La. 12/17/04), 916 So.2d 72. Moreover, *Hoffman* makes clear that we take a strict view of the requirements for diminishing a plaintiff's patrimony.  Thus, such an indirect diminution, *i.e.,* the loss of the employee's right to file a tort suit particularly when there are reciprocal benefits to the employee, is insufficient to satisfy the stringent definition that is being jurisprudentially developed.

Last, we find if Plaintiff prevails on the merits, a recovery of the reduced amount of medical bills will make him whole, which is an important consideration of both tort recovery and the application of the collateral source rule.  La. Civ. Code art. 2315.  The plaintiff was never obligated to pay more than the discounted amount

---

[3] The amount of $128,615 was "written off."

8

and under our civilian code of liability, Plaintiff should not profit from a tortfeasor in the absence of the availability and proof of punitive damages. In *Chauvin v. Exxon Mobil Corp.*, 2014-0808, p. 10 (La. 12/9/14), 158 So.3d 761, 768, this court stated:

> The general public policy in Louisiana is against punitive damages. *Ross v. Conoco, Inc.*, 02–0299, p. 14 (La. 10/15/02), 828 So.2d 546, 555. Thus, punitive or other penalty damages are not allowed unless expressly authorized by statute. And even when a statute does authorize the imposition of punitive damages, it is strictly construed. *Id.*

Plaintiff places much emphasis on tort deterrence, essentially arguing that it, as a public policy factor, overrides competing concerns regarding double recovery. We acknowledge the important role of tort deterrence within our tort system; however, to stretch the argument to include the award of un-incurred medical expenses, in addition to those actually paid, is to effectively authorize the assessment of punitive damages in the absence of statutory authority. Thus, in this case, we find there is no true deterrent effect to allowing Plaintiff to recover expenses over and above what was actually paid.

## CONCLUSION

To conclude, there is no basis to differentiate between the "written off" amount created by a reduced reimbursement fee under the Workers' Compensation Act and those of a Medicaid program or an attorney-negotiated medical discount. (*See Bozeman, supra* and *Hoffman*, *supra*). The bottom line is that the plaintiffs in each of these situations did not actually incur, and need not repay, the "written off" amounts at issue. Such amounts are illusory in that they are never statutorily susceptible of being paid by the plaintiffs. In the instant case, Plaintiff did not contribute to his employer's workers' compensation insurance premiums nor did he otherwise pay any consideration for the benefits. The healthcare providers, by law, cannot charge him for more than what the fee schedule allows. La. R.S. 23:1034.2(D). This reduction is not the benefit of some bargain struck by Plaintiff;

rather, in much the same way that medical expenses covered by Medicaid are limited by statute, so too are the medical expenses limited purely by operation of the Workers' Compensation Act. Thus, Plaintiff's patrimony was not diminished. Therefore, any recovery in addition to the reduced amount of medical bills would be a windfall to Plaintiff and against the rationale behind the collateral source rule. The discounted rate accurately reflects Plaintiff's compensatory damages, and anything beyond that rate would amount to punitive damages. Plaintiff's ability to fully recover and to be made whole is adequately represented by the availability of the reduced medical bills. Accordingly, we find the collateral source rule does not apply and the lower courts' rulings on the motions in limine are affirmed.

**AFFIRMED.**

SUPREME COURT OF LOUISIANA

No. 2018-CC-0735

KERRY SIMMONS

VERSUS

CORNERSTONE INVESTMENTS, LLC, ET AL.

ON SUPERVISORY WRITS TO THE NINTH JUDICIAL
DISTRICT COURT, PARISH OF RAPIDES

**Hughes, J., concurring.**

Respectfully, the majority fails to recognize the mechanics of a civil jury trial. Fortunately, an interlocutory ruling can be revised by the trial court at any point prior to final judgment.

I agree that the plaintiff may only recover the amount authorized by law for his past medical expenses, not the amount billed by the medical providers. However, this does not make the plaintiff "whole." This is not a workers' compensation case. The plaintiff is entitled to seek damages against the tortfeasor for, not only past medical expenses, but also for future medical expenses, pain and suffering, mental anguish, and other general damages allowed by law. To do so, the plaintiff is entitled to present to the jury evidence of the duration of his medical treatment, including each doctor visit, drugs prescribed, physical therapy ordered, or any other medical treatment endured. This evidence may best be presented through an itemized statement from the medical provider, with the dollar amounts for the charges and/or payments redacted. Thus the plaintiff may pursue his claim "to be made whole" without prejudice.

The amount for past medical expenses can be stipulated to by the parties, or the trial court can simply order the amount to be filled in on the jury verdict form as part of its ruling on the motion in limine.

SUPREME COURT OF LOUISIANA

NO. 18-CC-0735

KERRY SIMMONS

VERSUS

CORNERSTONE INVESTMENTS, LLC, ET AL.

ON SUPERVISORY WRITS TO THE NINTH JUDICIAL
DISTRICT COURT, PARISH OF RAPIDES

**GENOVESE, J., dissents and assigns the following reasons:**

This is a classic case of apples and oranges in the fruit orchard. The apple is the majority opinion; the orange is the trial court's ruling. This matter comes before this court via a motion in limine and not a trial on the merits. The trial court ruled in favor of the defendants precisely as follows (emphasis added):

> Defendants' Motion in Limine prohibiting evidence of the amount of medical expenses written off due to worker[s'] compensation payments is granted and that **the only evidence of medical expenses to go to the jury will be the amount paid by worker[s'] compensation**.

The elephant in the room is La. Code Evid. art. 414, which reads as follows (emphasis added):

> Workers' compensation payments
>
> **Evidence** of the nature and extent **of a workers' compensation claim or of payment of** past or future workers' compensation **benefits shall not be admissible to a jury, directly or indirectly**, in any civil proceeding with respect to a claim for damages relative to the same injury for which the workers' compensation benefits are claimed or paid. Such evidence shall be admissible and **presented to the judge only**.

An elementary reading of La. Code Evid. art. 414 mandates the inadmissibility of evidence, in a jury trial, of medical expenses paid by a workers' compensation

insurer. This codal article trumps the jurisprudential pronouncements relative to the collateral source rule.

The entirety of the majority opinion in this case focuses solely on the collateral source rule, breathlessly dismissing the relevant statute in a single sentence. It is an apple when picking oranges in the fruit orchard. Louisiana Code of Evidence Article 414 is directly on point and specifically prohibits any evidence of workers' compensation payments (directly or indirectly) to go to the jury. This is a jury trial. Thus, the trial court unquestionably erred in ordering that the only evidence of medical expenses to go to the jury will be the amount paid by the workers' compensation insurer of Cintas. The majority's interpretation of La. Code Evid. art. 414 that only the *source* of the workers' compensation payment is prohibited to be entered into evidence before a jury effectively neuters the broad and specific codal language that "evidence of the nature and *extent*" of a workers' compensation claim or payment shall not be admissible "directly *or indirectly*." This drive-by attempt to narrow Article 414's applicability conveniently ignores the fact that this provision could hardly be more expansively worded. The definitive language of La Code Evid. art. 414 clearly demonstrates that the Legislature did not intend for juries to have *even indirect evidence* of any workers' compensation benefits received by a claimant. Thus, any reference, direct or otherwise, to the benefits paid by a workers' compensation carrier violates Article 414. As a result of this opinion, anything goes with reference to payments made by the workers' compensation insurer in a tort case before a jury, regardless of the Article 414 prohibition.

There is no need to address the applicability of the collateral source rule vis-à-vis this case at this stage of the proceeding, as that issue was not ruled upon in this motion in limine. What was ruled upon was the trial court allowing evidence of workers' compensation payments to go to the jury in blatant contravention of the codal mandate of La. Code Evid. art. 414.

The trial court's ruling was an evidentiary ruling, not a ruling on the applicability of the collateral source rule. The effect of this ruling is critical. The tort victim loses, and the tortfeasor triumphs. The tort victim is now restricted to having the jury only consider the medical expenses paid by the workers' compensation insurer. This means that the tort victim will only be able to present to the jury the number of doctor visits, amount and extent of medication, and the number of treatments that amount to what the workers' compensation insurer paid, and not the actual number of doctor visits, the actual amount and extent of medication, or the extent of treatment had. Thus, the tort victim's medical picture is distorted and limited. The tort victim's attorney will not be able to argue to the jury the exact number of times the tort victim went to the doctor, the accurate length of treatment, and the accurate amount of medication taken, because the tort victim will only be able to have in evidence the treatment reflected by the amount paid by the workers' compensation insurer.

This violates the paramount right of the tort victim to present the full picture of his medical condition and treatment to the jury. Without knowing the actual number and extent of visits to the doctor, the actual amount and extent of medication involved, and the extent of medical treatment had, the jury cannot possibly accurately assess the extent of the tort victim's future medical treatment and future disability, if any. Certainly, the trial judge will not allow the tort victim's attorney to argue to the jury medical evidence that is not in the record due to the grant of this motion in limine. Thus, the tort victim is stymied.

The majority opinion, in granting defendants' motion in limine, allows the consideration by the jury of only $18,435 of the tort victim's $24,435 in total medical expenses. Six thousand ($6,000) dollars of the tort victim's medical expenses were written off solely as a result of the tort victim's workers' compensation claim. A strict interpretation of the trial court's ruling will preclude the tort victim's attorney

from the benefit of presenting to the jury expenses for the $6,000 in doctor visits, medical expense, and treatment. This reduction is at a minimum an indirect reference to the tort victim's workers' compensation claim and workers' compensation benefits received. He/she will not be able to argue what is not in the record. And just how is the trial judge to handle this at trial? The end result of this opinion penalizes the tort victim and rewards the tortfeasor in direct contravention of our tort law, particularly Louisiana Civil Code Article 2315.

In lieu of side-stepping La. Code Evid. art. 414 in granting defendants' motion in limine, the trial court judge can simply instruct the jury that the tort victim's medical expenses have been paid and let the jury decide the issues of damages based upon the tort victim's complete medical picture as opposed to a limited and/or restricted view. This, of course, is predicated upon the tort victim proving liability and his entitlement to damages to the satisfaction of the jury.

After the jury makes its damage award, any necessary adjustments can be made in accordance with this court's jurisprudence relative to the application, *vel non*, of the collateral source rule. At that point, the collateral source issue is drawn and can be dealt with accordingly, without impinging upon the tort victim's right to present his full medical picture to the jury.

Thus, I dissent from the majority opinion. I would reverse the lower courts, deny defendants' motion in limine, and remand for further proceedings.